Gus A. Eggart, Plaintiff in Error, vs. The State of Florida, Defendant in Error.

Criminal Law—Section 2618, Revised Statutes, Construed—Joinder of Different Offenses in One Indictment—Forcing Election Between Counts in Indictment—Medical Works, When Admissible as Evidence—Grouping in Single Assignment of Error Refusals to Give Divers Instructions—Discussing the Penalties for Crimes in Argument to Jury—Imprisonment for Non-Payment of Fines Imposed.

1.  In a prosecution for the crime defined by Section 2618 of the Revised Statutes, it is immaterial whether the female was actually *enceinte* or not, and it is unnecessary to allege or prove such fact; and when an information or indictment charging such crime follows the language of the statute it is sufficient.

2.  An indictment, or count in an indictment, that sufficiently charges a crime, but that charges it with a *continuendo,* the *continuendo* clause thereof may properly be rejected as surplusage, when the offense charged is not a continuing one, and

when such rejection leaves the indictment intact and otherwise unobjectionable.

3. Under Section 2893, Revised Statutes, it is not error to refuse to quash an indictment or information upon the ground that it charges several distinct offenses in separate counts thereof, unless such indictment is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.

4. It is within the sound discretion of the trial court whether it will or not require the prosecutor to elect upon which of several counts in an indictment he will try the accused; and where the various counts are properly joined therein and a conviction can legally be sustained upon any one, or upon all of such counts combined, it is proper to refuse to require such an election.

5. Medical works, of however standard and approved authority on the subject to which they relate, cannot be read or introduced before juries as independent, substantive or affirmative proof, but this rule is subject to the exception, that *specified* books may be introduced *in rebuttal* to contradict a witness who has testified to having derived therefrom teachings that they do not contain, or whose teachings are substantially different from that testified to.

6. Where a *single assignment of error* is made to embrace allegations of error in the giving, or refusal to give *more than one instruction* asserting distinct propositions of law, an appellate court will go no further in the consideration of such an assignment after it has ascertained that there was no error in giving or refusing to give *any one* of the several instructions thus aggregated under the one assignment, but will then adjudge such assignment of error to be not well taken.

7. Except in cases of murder in the first degree, where a majority of the jury may by a recommendation to mercy in their verdict commute the penalty from death to life imprisonment, trial juries under the laws of Florida have no concern whatever with the penalties to be imposed for crime, and it is therefore not improper for trial judges to refuse to inform or instruct the jury as to what penalties the laws prescribe for any given crime, or to refuse to permit counsel to discuss the same in their arguments to the jury.

8. Under the provisions of Chapter 4026, Laws of 1891, where the

primary penalty imposed by the judge upon conviction of any crime consists *only of a fine*, or of a *fine and costs of prosecution*, the alternative penalty of imprisonment for *non payment* of such fine and costs should be in the *county jail*, and not in the penitentiary.

Writ of Error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the Court.

*Liddon & Eagan* for Plaintiff in Error.

*The Attorney General* for Defendant in Error.

TAYLOR, C. J.:

At the May term, 1897, of the Criminal Court of Record of Escambia county, upon information filed by the County Solicitor, Gus A. Eggart, the plaintiff in error, as defendant below, was tried and convicted of the crime of unlawfully administering drugs and other noxious things with the intent to procure a miscarriage, and from the sentence imposed seeks reversal by writ of error.

The information upon which the defendant was tried and convicted, omitting its caption, is as follows: "Be it remembered that E. D. Beggs, acting county solicitor for the county of Escambia, prosecuting for the State of Florida in said county, being present in our said Criminal Court of Record in and for the said county of Escambia, on the 14th day of May, A. D. 1897, under oath information made, and gave the court to be informed and understand that Gus A. Eggart, late of the county of Escambia aforesaid, in the State aforesaid,

laborer, on the 18th day of February in the year of our Lord one thousand eight hundred and nine-seven, and on divers other days and times between that day and the 9th day of March, A. D. 1897, with force and arms at and in the county of Escambia aforesaid, did unlawfully advise and cause to be taken by Rosalie Rauch, a woman, certain drugs, medicines and other noxious things, to-wit: pills, known as pennyroyal pills, and a liquid known as fluid extract of cotton root, with the intent of him, the said Gus A. Eggart, then and there, thereby to procure miscarriage of her, the said Rosalie Rauch, in consequence whereof the said Rosalie Rauch did not die; against the form of the stat-ute in such case made and provided, to the evil example of all others in like cases offending, and against the peace and dignity of the State of Florida.

And the said E. D. Beggs, acting County Solicitor for the county of Escambia, prosecuting for the State of Florida in said county, being present in our said Criminal Court of Record in and for the said county of Escambia, on the 14th day of May, A. D. 1897, under oath information made, and further gave the court to be informed and understand that the said Gus A. Eggart at and in said county and State, on the 18th day of Feb-ruary, A. D. 1897, did unlawfully advise and cause to be taken by the said Rosalie Rauch, a woman, certain noxious things, to-wit: pills, composed of iron, sulphate and aloes, with a coating of sugar, with the intent of him, the said Gus A. Eggart, thereby then and there to procure miscarriage of her, the said Rosalie Rauch, in consequence whereof the said Rosalie Rauch did not die; against the form of the statute in such case made and provided, to the evil example of all others in like cases offending, and against the peace and dignity of the State of Florida.

And the said E. D. Beggs, acting County Solicitor

for the county of Escambia, prosecuting for the State of Florida in said county, being present in our said Criminal Court of Record in and for the said county of Escambia, on the 14th day of May, A. D. 1897, under oath information made, and further gave the court to be informed and understand that the said Gus A. Eggart at and in said county and State, on the 4th day of March, A. D. 1897, did unlawfully advise and cause to be taken by the said Rosalie Rauch, a woman, a certain noxious thing, to-wit: fluid extract of cotton root, with the intent of him, the said Gus A. Eggart, thereby then and there to procure miscarriage of her, the said Rosalie Rauch, in consequence whereof the said Rosalie Rauch did not die; against the form of the statute in such case made and provided.    *    *    *    Wherefore the said E. D. Beggs, acting County Solicitor as aforesaid, prays the advice of the said court in the premises, and that the said Gus A. Eggart may be arrested and held for trial under the foregoing information, and that a capias may issue forthwith for his arrest."

Before arraignment the defendant moved the court to quash the information on the following grounds: 1st. The information is vague, indefinite and uncertain, and charges no offense against the laws of the State of Florida. 2nd. The information fails to charge an offense against the laws of the State of Florida, in this: that it does not charge that the said Rosalie Rauch, in the information named, was pregnant, or that she was with child, or that she was quick with child. 3rd. The information charges more than one offense in the same count, and charges different offenses in different counts of the same. 4th. The information is void for the reason that the court had no legal power or jurisdiction to appoint E. D. Beggs as acting County Solicitor; and said E. D. Beggs had no jurisdiction, power or authority to officially sign said information."

The ruling of the court denying this motion is the first assignment of error. In support of this assignment of error it is chiefly contended here that the information should have alleged, not only that the woman was pregnant, but that she was quick with child, and it is argued that at the common law it was no crime to procure the miscarriage of a woman with her consent, unless she was in that advanced state of pregnancy technically known as being "quick with child." Such undoubtedly was the common law. Smith v. State, 33 Me. 48, S. C. 54 Am. Dec. 607; State v. Cooper, 2 Zab. (N. J. L.) 52, S. C. 51 Am. Dec. 248; Commonwealth v. Parker, 9 Met. (Mass.) 263, S. C. 43 Am. Dec. 396; Taylor's Med. Juris. (12th Am. Ed.), p. 549 and cases cited. But our statute, (Rev. Stat. § 2618) under which the conviction was had has changed all this, and is as follows: "Whoever with intent to procure miscarriage of any woman unlawfully administers to her, or advises or prescribes for her, or causes to be taken by her, any poison, drug, medicine or other noxious thing, or unlawfully uses any instrument or other means whatever with the like intent, or with like intent aids or assists therein, shall, if the woman does not die in consequence thereof, be punished by imprisonment in the State prison not exceeding seven years, or by fine not exceeding one thousand dollars." This statute is substantially the same as the statute of the State of Massachusetts (Public Statutes of Massachusetts; compilation of 1882, § 9, p. 1166); and Massachusetts adopted it from the British statute of 1 Vict. c. 85, §6. Commonwealth v. Taylor 132 Mass. 261. In the last mentioned case it was held under their statute, of which ours is a substantial copy, that it is not necessary to the maintenance of an indictment * * * for an attempt to procure the miscarriage of a woman, that she should be pregnant with child. And under the statute of 1 Vict. c. 85, §6, from which both

our own and the Massachusetts statute were originally borrowed, it was held in the case of Regina v. Goodchild, 2 Car. & Kir. 293 (61 Eng. Com. Law, 292), that on the trial of an indictment   *   *   *   for using an instrument with intent to procure the miscarriage of a woman. it is immaterial whether the woman was actually pregnant or not. Our statute, like those from which it was borrowed, was designed to punish the *attempt* to procure the miscarriage of any woman by any of the means mentioned in the statute, whenever such attempt is made with an unlawful *intent*.   And when an information or indictment, charging such offense, follows the language of the statute it is sufficient.   Commonwealth v. Sholes, 13 Allen (Mass.), 554; Commonwealth v. Grover, 16 Gray (Mass.), 602; Commonwealth v. Tibbetts, 157 Mass. 519, 32 N. E. Rep. 910; Commonwealth v. Surles, 165 Mass. 59, 42 N. E. Rep. 502; Powe v. State, 48 N. J. L. 34, 2 Atl. Rep. 662.

We do not think the information is subject to the further objection made in the motion to quash same, to the effect that it is vague, or indefinite, or that it charges no offense under our law.   On the contrary, it charges the offense in its various counts substantially and fully in the language of the statute; and, as the statute describes all the material elements of the offense fully, this is sufficient.

It is further insisted here that the first count of the information charges the offense with a *continuendo,* and that because the offense is not a continuing one this count is bad for that reason.   This contention can not be sustained.   The *continuendo* feature of the count may properly be rejected as surplusage, and when this is done the count is unobjectionable.   Dansey v. State, 23 Fla 316, 2 South. Rep. 692.

Neither can the further contention be sustained that the information is bad because in it are charged

several separate and distinct felonies. Section 2893 Revised Statutes provides that "no indictment shall be quashed or judgment be arrested or new trial be granted on account of any defect in the form of the indictment, or of misjoinder of offenses or for any cause whatsoever unless the court shall be of the opinion that the indictment is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation,of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense." It has been repeatedly held here that under this statute it is no objection to an indictment that two or more offenses are joined in separate counts therein, unless, upon an application to quash or motion in arrest of judgment, the court shall be of opinion that the indictment was so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to danger of a new prosecution for the same offense. Green v. State, 17 Fla. 669; Kennedy v. State, 31 Fla. 428, 12 South. Rep. 858. There is nothing in any of the counts of this information, taken separately or collectively, that tended to mislead or embarrass the defendant in the preparation of his defense, or that exposed him, after conviction or acquittal, to another prosecution for the same offense. An indictment charging in different counts two or more attempts to commit the same crime upon the same woman, but upon different dates, as in the information here, was sustained in Commonwealth v. Brown, 121 Mass. 69; and in Commonwealth v. Follansbee, 155 Mass. 274, 29 N. E. Rep. 471, it was held that where the several counts of an indictment for procuring a miscarriage set forth separate offenses, the counts were properly joined in one indictment, and that it was competent for the jury to find the defendant guilty on one or .more of them. Tabler v. State, 34 Ohio St. 127.

The fourth ground of the motion to quash the indictment, that questions the power of the Judge of the Criminal Court of Record to appoint an acting County Solicitor in place of the regular official when disqualified, as was done in this case, is not argued or presented, and, consequently, will be treated as abandoned.

The refusal of the court to require the prosecution to elect upon which of the several counts of the information it would proceed to try the accused, is assigned as the second error.   There was no error in this.  It is within the sound discretion of the trial court whether it will or not require such an election, and none was necessary in this case since, as before shown, the various counts were properly joined and the defendant could properly have been convicted upon one or all of them. Murray v. State, 25 Fla. 528, 6 South. Rep. 498; Gantling v. State, 40 Fla. ——, 23 South. Rep. 857; Green v. State, 17 Fla. 669.

The third, fourth, fifth, sixth, seventh and eighth assignments of error all involve the admission in evidence by various witnesses of confessions made by the defendant at the same time and place touching his past relations with the female upon whom the alleged crime was attempted, and to the administration to her at different times of divers drugs.   There was no error in the admission of this evidence.   Whether confessions proposed in evidence have been made with that freedom and voluntariness necessary to their admissibility is a preliminary question of fact for the trial judge to decide, and we can not say, from the testimony on this point in the record before us, that the judge erred in his determination of it. There is some slight evidence tending to show that the defendant went unwillingly to the house where the confessions were made, but he was not there restrained of his liberty in any way, neither were the confessions extorted from him by threats or by the holding out of any

inducements.   But besides this, the defendant as a witness on his own behalf at the trial, practically admitted and reiterated all of the material substance of the protested confessions.

The ninth assignment of error is expressly abandoned here.

The tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments of error all relate to the admission by the court of medical expert testimony of two physicians as to the physical effect that certain drugs, shown by the proofs to have been administered by the defendant to the female, would have upon a pregnant woman, and to the refusal of the defendant's motion to strike out said evidence.   The defendant's contention is that these medical witnesses were not shown to have the necessary qualifications to entitle them to testify as experts; that their knowledge of the drugs in proof and of their effects upon the human system were shown to have been derived solely from the study of medical authorities without practical experience therewith, and that to qualify them as experts to testify they should have had practical experience combined with knowledge derived from the study of medical authorities.   There was no error in these rulings.   Even should we admit the law to be as is contended for by counsel, the evidence in the record before us shows that the medical witnesses challenged were qualified as experts, both by study of authorities and from practical experience with the drugs in question.

The defendant in error has misnumbered his assignments by omitting the sixteenth and seventeenth in his enumeration of them, so that we, following his enumeration, pass likewise from the fifteenth to the eighteenth.

The defendant enquired of a medical witness introduced on his behalf: "If his experience was sufficient to enable him to tell whether an analysis of the drugs

administered by the defendant, made by and testified about by another medical man on behalf of the State, was a proper analysis, sufficient to determine the ingredients and the amount thereof contained in such drugs?" and also: "If he knew what apparratus was necessary for properly analyzing pills containing vegetable and mineral ingredients like aloes and sulphate of iron?" Both of these questions were excluded by the judge, on objection by the State, and these rulings constitute the eighteenth and nineteenth assignments of error. The first of these questions was properly excluded because, instead of seeking a detailment by the witness of facts that would exhibit to the judge what his qualifications were as an expert on the subject enquired about, it sought simply to elicit the witness' *opinion* as to the extent of his own qualifications on the subject. The second question excluded might with propriety have been permitted to be answered, but its exclusion was harmless in view of the fact that the witness was subsequently permitted to testify to every material fact in substance that could have been elicited by such question.

The twentieth assignment of error is the ruling of the court permitting the State on cross-examination of the medical expert witness of the defendant to interrogate him as to whether he would give to a pregnant female patient upon whom he did not desire to produce a miscarriage the same quantity per day for three days of the same drugs testified to have been administered by the defendant. There was no impropriety in this ruling. The question tended to sift the witness' qualifications as an expert, and, to some extent, tended to test the value of portions of his testimony relative to the effects likely to be produced by the drugs mentioned.

The twenty-first assignment of error is the refusal of the judge to permit the defendant, while testifying as a witness on his own behalf, to answer the following

question: "For what purposes or uses are they, (the pills he said he had given the female) recommended?" And the refusal of the judge to permit the following question to be propounded to the same witness: "Did you say anything about its being used to drive it off?" is assigned as the twenty-second error. Both questions could with propriety have been permitted, but no harm has accrued to the defendant by their exclusion, since he was permitted subsequently to testify full and substantial responses thereto.

The twenty-third and twenty-fourth assignments of error are abandoned here by non-presentation.

The judge permitted a State's witness, over the defendant's objection, to read to the jury various excerpts from the medical work known as the United States Dispensatory, relative to the uses, properties and medical effects of fluid extract of cotton root. This ruling is assigned as the twenty-fifth error. There was no error here. The weight of authority is that medical works, of however standard and approved authority on the subjects to which they relate, can not be read or introduced before juries as independant, substantive or affirmative proof, but that *specified* books may be introduced *in rebuttal* to contradict a witness who has testified to having derived therefrom teachings that they do not contain, or whose teachings are substantially different from that testified to. Pinney v. Cahill, 48 Mich. 584, 12 N. W. Rep. 862; Gallagher v. Market St. Ry. Co., 67 Cal. 13, 6 Pac. Rep. 869; Ashworth v. Kittridge, 12 Cush. (Mass.) 193, S. C. 59 Am. Dec. 178; People v. Wheeler, 60 Cal. 581, S. C. 44 Am. Rep. 70; Boyle v. State, 57 Wis. 472, 15 N. W. Rep. 827; Washburn v. Cuddihy, 8 Gray. (Mass.), 430; Stilling v. Town of Thorp, 54 Wis. 528, 11 N. W. Rep. 906. The defendant, as a witness for himself, had testified to having read from the identical book offered in evidence about the fluid

extract of cotton root and of its uses and effects, and in his testimony practically asserted that this book had taught him that said drug was nothing more than a emmenagogue, and that there was nothing in the book to show that it was an abortifacient. The introduction of the identical book that he said he had read became, under these circumstances, material and proper, for the reason that the excerpts permitted to be read therefrom to the jury were shown to be the only mention made in such book of that particular drug, and the excerpt read to the jury showed that no one could have read it without seeing that it asserted one of the uses of the drug to be as an abortifacient, thus tending to rebut and contradict the defendant's testimony that he had not seen such use of the drug asserted therein.

The twenty-sixth assignment of error is the making of the following remarks by the judge at the trial to counsel in the case in the hearing of the jury: "That in his opinion it was not necessary to prove that the drug, medicine or other thing advised or caused to be taken by the female should be noxious, but the advising or causing to be taken of any substance, whether noxious or not, if with intent charged in the information would constitute the offense." This version of the law, had it been given as an instruction to the jury would have been error, but it was nothing more than a tentative suggestion by the judge to the counsel in the case upon purely a question of law that does not seem to have been up for adjudication at the time the remark was made, and, subsequently, when the time for instructions on the law of the case had arrived, the judge corrected any erroneous impressions that may have been conveyed by such remarks by instructing the jury fully, pointedly and correctly on the subject.

The twenty-seventh assignment of error is stated here as follows: "The court erred in refusing to give

the special charges requested by the defendant numbered as follows, 5th, 6th, 8th, and 10th." The charges, the refusal to give which are thus assigned as error, are as follows: 5th. In considering any and all of the counts of this information, you can not find the defendant guilty upon any of them unless you find that he administered or caused to be taken by Rosalie Rauch some noxious substance with the intent to procure a miscarriage of her. If the evidence shows you beyond all reasonable doubt that the defendant administered or caused to be taken by Rosalie Rauch some medicine or other thing, then you must determine whether such medicine or other thing was noxious—that is, hurtful or harmful, or used to procure a miscarriage. As to whether a medicine or other thing is or is not noxious, depends to a large extent upon the amount taken. A substance which might be noxious in larger doses, might not be noxious in smaller doses. Therefore, if you find from cause that the defendant did unlawfully advise, or cause to be taken by Rosalie Rauch any medicine or other thing, then you must consider from the evidence whether the quantity of such medicine or other thing advised or caused to be taken was injurious or likely to be dangerous or hurtful to the said Rosalie, and unless the evidence convinces you beyond all reasonable doubt that the substance which the defendant advised or caused to be taken by the said Rosalie Rauch was advised or caused to be taken in such quantity as was injurious and hurtful or likely to be injurious and hurtful to the said Rosalie Rauch, you must find the defendant not guilty.

6th. The general definition of a noxious substance is one that is hurtful and harmful to the human system, but in the sense used in the information, a noxious substance is one likely to procure miscarriage in a woman pregnant with child; and unless the evidence shows you in this case beyond all reasonable doubt that the defend-

ant advised and caused to be taken by Rosalie Rauch some of the medicines or other noxious things in the several counts of the information described, or some of them, and that they were such substances as are likely in the quantity of the same advised or caused to be taken, to produce a miscarriage in a pregnant woman, then you must find the defendant not guilty.

8th.   The statutes under which the information is filed contemplates that the woman who is advised or caused to take the drug, medicine or other noxious thing, shall be quick with child at the time the offense is committed.   Therefore, you can not find the defendant guilty upon the information unless you believe beyond all reasonable doubt that he advised and caused to be taken by one Rosalie Rauch some drug, medicine or other noxious thing, with the intent to procure a miscarriage by her, the said Rosalie, and that she was at said time quick with child.

10th.   If you believe from the evidence beyond a reasonable doubt that defendant did advise the said Rosalie Rauch to take certain noxious or harmful drugs which from their natural effect would have the power to cause her, the said Rosalie Rauch, to have a miscarriage, yet if you should also believe that she, the said Rosalie Rauch, did not take the said medicine as advised to be taken, then you should find the defendant not guilty, as the law requires under the statutes that the State should prove beyond all reasonable doubt that the said Gus A. Eggart not only gave the  advice,  but  that  the  said Rosalie Rauch acted upon it and took said medicine as directed.

It will be observed that this one assignment of error is made to embrace, *en masse*, the refusals to give four several requested instructions.   The rule is quite generally settled that an assignment of error made to embrace allegations of error in the giving,  or  refusal  to  give,

*more than one instruction* asserting distinct propositions is entirely insufficient, and that such an assignment will not generally be considered by the appellate court, but even if it consents to consider such an assignment at all it will go no further after it has ascertained that there was no error in giving or refusing to give, any one of the instructions thus aggregated under the one assignment. The latter part of the rule, we think, is the correct one under our practice. 2 Ency. Pl. & Pr., 950 and 951; Collins v. Spence, 84 Ga. 503, 11 S. E. Rep. 502; Swift v. Mulkey, 17 Oregon, 532, 21 Pac. Rep. 871; Kackley v. Evansville and T. H. R. R. Co., 7 Ind. App. 169, 34 N. E. Rep. 532; People v. Sweeney, 55 Mich. 586, 22 N. W. Rep. 50; Pratt v. Burhans, 84 Mich. 487, 47 N. W. Rep. 1064; Hiatt v. Kinkaid, 40 Neb. 178, 58 N. W. Rep. 700. Under this rule we will not consider this assignment of error further than to say that it is not well taken, because at least two of the refused instructions thus aggregated in the one assignment of error were erroneous propositions of law, and were correctly refused. We have seen before that under the statute violated in this case it is not necessary to a commission of the offense thereby prohibited that the woman should be alleged or proven to have been actually quick with child, or even in a state of pregnancy. The eighth requested instruction states the contrary to be the law, and the court was right in its refusal. The court also properly refused the tenth requested instruction because it erroneously asserts the law to be that in such cases there must be a heeding or following of the advice on the part of the woman by her actually taking the drug, medicine or other noxious thing advised to be taken, before there can be a conviction for the crime. The statute expressly provides that "whoever unlawfully *administers*, or *advises*, or *prescribes* for any woman any drug, medicine or other noxious thing, with the intent to pro-

cure her miscarriage, shall be guilty," etc. Uunder this law if a party simply *advises* or *prescribes* the taking of any medicine, drug or other noxious thing, unlawfully, and with the criminal *intent*, the inhibited crime is complete, whether the advice be followed or prescription taken or not.

During the argument of the defendant's counsel to the jury he made use of the following expressions: "The defendant has offered to you evidence of his good character; he has shqwn that previous to this charge being made against him that his reputation was that of an exemplary young man in this community. This is shown by witnesses of the highest standing. And sitting here, it may be within the awful shadow of the penitentiary, he may be proud of the reputation he has established." The counsel was here interrupted by the judge who instructed him that in the further course of his argument he must desist from any intimation to the jury as to the nature of the punishment prescribed by the law for the offense then being tried. This interruption and ruling was excepted to. and is assigned as the twenty-eighth error. This was not error. In States having laws like ours, that give to trial juries no voice whatever in the penalty to be imposed for crime, but that either by their own terms expressly fix such penalty, or leave it to be fixed by the trial judge, at his discretion, to be exercised within specified minimum limits, the rule is that trial juries have no concern whatever with such penalty, and that it is not improper for the judge to refuse to inform or instruct the jury as to such penalty, or to refuse to permit counsel for the defendant to discuss it in their arguments to the jury. Ford v. State, 46 Neb. 390, 64 N. W. Rep. 1082; Russell v. State. 57 Ga. 420; People v. Ryan, 55 Hun. 214, 8 N. Y. S. 241. Under our laws trial juries have nothing to do with the penalty to be imposed for any crime, with but a single exception, that of

murder in the first degree, where, by the recommenda-
tion to mercy by a majority of the jury, the penalty is re-
duced from death to life imprisonment. In this excepted
case it is of course proper that the judge should instruct
the jury as to their right thus to reduce the extreme
penalty by their recommendation to mercy.

The twenty-ninth assignment of error is stated here
as follows: "The court erred in those portions of its
charge to the jury which are embraced and set forth in
the 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, grounds
of the motion for new trial, and to be found in the re-
cord pages 154, 155, 156." Inasmuch as the questions
of law involved in these instructions have already herein
been passed upon, and any other consideration of them
will be simply reiteration, we will say that we have exam-
ined the charges complained of carefully and find them
to be in consonance with the law as herein enunciated
and that there was no error in giving any of them of
which the defendant can complain.

The thirtieth assignment of error is the refusal of
the defendant's motion for new trial. We have, in what
has been already said, disposed of all the grounds of this
motion that have been argued here, except that feature
of it claiming that the verdict was contrary to the evi-
dence and not supported by it, and contrary to the
charge of the court. This contention can not be sus-
tained; the evidence amply sustains the verdict found,
and the court in its charges stated the law fully and fair-
ly, and the verdict is in harmony with the law as given
in charge.

The thirty-first assignment of error is the re-
fusal of the motion in arrest of judgment. The only
grounds of this motion argued or contended for here
have already been discussed and found adversely to the
defendant in the consideration above of the motion to
quash the indictment.

The defendant was sentenced to pay a money fine,

or, in default of its payment, to confinement in the county jail for one year.   This is also assigned as error.   In Bueno v. State, 40 Fla.——, 23 South. Rep. 862, it was held by this court that under the provisions of Chapter 4026, laws of 1891, that where the primary penalty imposed by the court consists *only of a fine*, or of a *fine and costs of prosecution*, the imprisonment for nonpayment of such fine and costs should be in the county jail, and not in the penitentiary.   We still think this to be a proper interpretation of the statute, and the sentence imposed here was not unauthorized.

Finding no error, the judgment of the court below is affirmed.